[Civil No. 251.    Filed March 19, 1889.]

[21 Pac. 888.]

THE TERRITORY OF ARIZONA, Plaintiff and Appellee, v. DELINQUENT TAX LIST OF APACHE COUNTY FOR 1887, Defendants and Appellants. Appeal of the Atlantic and Pacific Railroad Company.

1. TAXATION—DELINQUENT TAXES—JURISDICTION—SPECIAL TERM—REV. STATS. ARIZ. 1887, PARS. 2685, 628, CITED AND CONSTRUED.—The Revenue Act (par. 2685, *supra*), provides that the tax-collector must publish, with the delinquent list, a notice that he will apply to the

district court "at the next ensuing term thereof" for judgment and order of sale of the property described, and also give notice "that on the Monday next succeeding the day fixed by law for the commencement of such term" such property will be sold. Regular terms of the district court commence on the first Monday in July of each year. Paragraph 628, *supra,* provides that special terms of the district court may be held "whenever in the judgment of the presiding judge of said court public justice demands it," and that notice be given by the clerk upon the order of the judge by publication. The proceeding contemplated by the revenue law, being special, should be strictly construed and every material provision of the statute complied with. The term "fixed by law" must be the regular term of court as fixed by statute. Special terms cannot embrace special proceedings requiring fixedness of time.

2. COURTS—SPECIAL TERMS—RECORD.—The record must affirmatively show the authority by which a special term is held.

WRIGHT, C. J., dissents.

On rehearing.

1. REHEARING—PURPOSE OF.—The purpose of a rehearing is not to open the whole case, but to afford an opportunity for the court to correct any misapprehension of the record, or any oversight or omission inadvertently made. *Arizona Prince Copper Co.* v. *Copper Queen Copper Co.,* 2 Ariz. 169, 11 Pac. 396, cited.

2. COURTS—REGULARITY OF PROCEEDINGS—PRESUMPTIONS—WANT OF RECORD—SPECIAL TERM—CONVENING ORDER.—While what is recited in the record of a court of general jurisdiction as having been done is presumed to be done, this presumption will *not* put *into* the record what is not there. The record of a special term must show that it met according to law and upon due notice.

3. TAXATION—COLLECTION BY SUIT—SPECIAL PROCEEDING IN REM—JURISDICTION OF COURT SPECIAL.—The collection of taxes is a special proceeding *in rem.* When this special power is conferred on courts they are treated, in the exercise of it, as courts of special jurisdiction.

APPEAL from a judgment of the District Court of the Third Judicial District in and for the County of Apache. James H. Wright, Judge. Reversed.

The facts are stated in the opinion.

William C. Hazeldine, Solicitor for Appellant. J. A. Williamson, and E. M. Sanford of Counsel.

As appears on the face of the complaint, it was filed at "the special April term, 1888." The judgment and proceedings

and all the acts sought to be reviewed by this appeal were also had at a special term.

The notice of the time and place of sale of property mentioned in the delinquent list (including that of defendant) fixes the date of application to District Court, for a judgment against the same, upon the third Monday in April, 1888, and announces that the sale of said property will take place on the Monday succeeding said third Monday in April, 1888.

The regular term of the district court, as fixed by law, to be held in the county of Apache, commences on the first Monday of July of each year. Rev. Stats. Arizona, p. 162, par. 626.

From this it appears that only one term of court is provided for by law to be held in the county of Apache each year, and that the term at which the judgment complained of was attempted to be rendered, commenced on the third Monday in April, 1888, the same being the sixteenth day of April.

For provisions as to holding special terms of court, see Rev. Stats. Arizona, p. 162, par. 628.

For provisions as to requirements of the delinquent list and when it must be published, see Rev. Stats. Arizona, p. 479, par. 2685.

A judgment, to be in accordance with the statute, must be rendered at a term fixed by law, and the collector's notice appended to the delinquent list must distinctly state the fact that he will apply for judgment at the next ensuing term after the publication of such delinquent list and for an order to sell the property therein specified on the Monday next succeeding the day *fixed by law* for the commencement of *such term;* that is to say, the law specifically declares that special jurisdiction is given to district courts to pass upon the sale of delinquent property for taxes at terms fixed by law. The question to be passed upon herein is, is a special term of court a term fixed by law? If this proposition be answered in the negative, the entire proceedings sought to be had in this case fall to the ground.

The statute providing for the sale of property for taxes being in derogation of the common law, and in effect providing for the confiscation of property for the non-payment of taxes, must be strictly construed, and every act and thing

required to be done, must be done at the time and in the manner prescribed and in strict accordance with the provisions of the act.

The supreme court of the United States has established the rule, which is imperative so far as the territories are concerned, in the opinion delivered by Mr. Chief Justice Marshall in the case of *Thatcher* v. *Powell,* as follows: "In summary proceedings where a court exercises extraordinary power under a special statute prescribing its course, we think that course ought to be exactly observed, and those facts especially which give jurisdiction, ought to appear in order to show that its proceedings are *coram judice.*" *Thatcher* v. *Powell,* 6 Wheat. 119.

The jurisdiction of the district court to take cognizance of these tax cases is dependent entirely upon the publication of the advertisement heretofore mentioned. Rev. Stats. Arizona, 1887, *supra.*

As illustrating the strict and technical compliance with the statute required in tax sales, attention is called to the rule in Missouri, where the law requires the sale to be made before the courthouse door of the county. In several instances the sales were made inside the courthouse, and were held void. The court says: "The law has prescribed the place of sale, and that is the only proper place, *and it is so because the law has said so,* and there can be no reasoning about it." *Rubey* v. *Huntsman,* 32 Mo. 501.

There is no authority under the common law for a court to order the sale of property for taxes due thereon. This is a special proceeding deriving its validity and authority from statutory law. The jurisdiction conferred is special and limited. It must appear from the recitals of the record itself that the facts existed which authorized the court to act. In this instance the record shows these acts were done at a special term, and the law prescribes that the proceedings must be had at a term fixed by law. Cooley on Taxation, p. 358; *Thatcher* v. *Powell,* 6 Wheat. 119; *Dakin* v. *Hudson,* 6 Cow. 221; *Deming* v. *Corwin,* 11 Wend. 647; *Selden* v. *Wright,* 5 N. Y. 497; *Bridge* v. *Ford,* 4 Mass. 641; *Platt* v. *Stewart,* 10 Mich. 260.

This brings us to the question as to the meaning of the

phrases used in the act, "at the next ensuing term" and "the Monday next succeeding *the day fixed by law* for the commencement of such term," and as to whether or not they could be construed as embracing special terms, or terms called by and at the pleasure of the judge, and not held upon dates fixed and determined by legislative enactment.

Terms of court are defined to be those times or seasons of the year which are set apart for the dispatch of business in the superior court of common law. Tidd's Practice, 105. As is said by the supreme court of Pennsylvania, "Civilization and its attendant, commerce, has in more modern times extended the administration of the law by the courts of justice much beyond the limits of merely leisure periods; but still terms, definite and fixed, are prescribed and are absolutely necessary to the successful administration of the judicial duties, so far as the public is concerned; and hence they are with us, fixed by positive law. . . . On this point (speaking of the question raised as to the jurisdiction at an adjourned term) the act of the 5th of April is very explicit. It provides that the terms of the court shall commence on the first Mondays in March, June, September, and December, and continue for four weeks at each term. This is the *term fixed by and known to the law,* and it cannot be supposed that the obligors understood that any different or other time was meant." *Horton* v. *Miller,* 38 Pa. St. 270; *Butcher* v. *Brand,* 6 Iowa, 235; *State* v. *Posey,* 17 La. Ann. 252.

"When the statute speaks of 'terms,' the terms constituted by law are meant, not *special terms* appointed by the court. *Commonwealth* v. *Sessions of Norfolk,* 5 Mass. 435; *Smith* v. *Cutler,* 10 Wend. 590, 25 Am. Dec. 580." *Tompkins* v. *Clackamas Co.,* 11 Or. 364, 4 Pac. 1210. See, also, *Dunn* v. *State,* 2 Ark. 229, 35 Am. Dec. 54; *Garlick* v. *Dunn,* 42 Ala. 404; *Brown* v. *Hogel,* 30 Ill. 119; *Marsh* v. *Chestnut,* 14 Ill. 224; *Spellman* v. *Curtenius,* 12 Ill. 409.

The rule established by the supreme court of the United States for the government of this and other courts directly subordinate to it as to the construction to be placed upon statutes providing for the sale of property for the nonpayment of taxes, is as follows: "In an *ex parte* proceeding, as a sale of land for taxes under a special authority, great

strictness is required. To divest an individual of his property against his consent, every substantial requisite of the law must be shown to have been complied with. No presumption can be raised in behalf of a collector who sells real estate for taxes to cover any radical defect in his proceeding.'' *Ronkendorf* v. *Taylor's Lessee,* 4 Pet. 349.

A term called by a judge or a special term is not in any sense of the word a term fixed by law, or such a term designated by the legislature as that at which proceedings should be had for the purpose of enforcing the collection of delinquent taxes.

Even if it were possible to place such a construction upon the language ''a term fixed by law'' as to embrace a special term called by the judge, this special term at which the judgment in this case was attempted to be rendered was *coram non judice,* because the record does not show, neither does it appear affirmatively in any manner, that this special term was called in manner and form as required by law.

The section authorizing special terms provides that the same may be held upon notice for that purpose to be published in a newspaper, such notice to be given by the clerk upon the order of the judge. Rev. Stats., sec. 628, *supra.*

This being a special term, the power to convene and the authority under which the same was opened must appear affirmatively of record, as no presumptions are indulged in favor of a special term, thus reversing the usual rule as to courts of general jurisdiction. *Clelland* v. *People,* 4 Colo. 244; *Dunn* v. *State,* 2 Ark. 229, 35 Am. Dec. 54.

John A. Rush, Attorney-General, and Harris Baldwin and T. W. Johnston, special counsel, for Appellee.

''It is unnecessary that the order calling a special term of the circuit court should be set out in the record. Unless the contrary expressly appears, the presumption is in favor of the regularity of the term.'' *Teerner* v. *People,* 81 Ill. 412.

''Where a proceeding appears to have been at a special or general term, the presumption of law is in favor of the regularity of said term and of the jurisdiction of the court. This presumption may be rebutted, it is true, by showing affirmatively that there was no order of the judge or court ap-

pointing the special term, or where the court can see from the public law that the judge was required to be in another place, holding another court." *Cook* v. *Renick,* 19 Ill. 600.

"It is contended that if the court was legally empowered to hold a special term, it was in this instance done without authority of law, because it does not appear by the record that the judge notified the sheriff of the same, or that the sheriff put up at each of the precincts in the county at least three weeks' notice of the time when the special term was to commence. As decided by this court time and again, we must necessarily presume that the officers of the court performed their duty in such particular, unless the contrary appears." *Harriman* v. *The State,* 2 G. Greene, 277.

"The statute providing for it is merely directory, and such notice is not considered an essential prerequisite to confer jurisdiction." *Harriman* v. *The State,* 2 G. Greene, 277. ·

See, also, *Wright* v. *Lee,* 2 G. Greene, 94; *Reynolds* v. *Stansbury,* 20 Ohio, 353; *Bosworth* v. *Vanderwalker,* 53 N. Y. 599; *Ferguson* v. *Crawford,* 86 N. Y. 611.

PORTER, J.—This is one of the cases wherein the Atlantic & Pacific Railroad resists the payment of the taxes for the year 1887 in the counties of Mojave, Yavapai, and Apache. There are questions common to each of those counties, but an independent one applies alone to the county of Apache, which question arises as to the jurisdiction of the court in which judgment was obtained against the railroad. A special appearance was made to the jurisdiction, and the contention made that, it being a special term of the court, there was no authority to try the tax cases. The complaint shows its being filed at the special April term, 1888. The judgment was had at the special term. The notice of the time and place of sale of property in the delinquent list fixes the date of the application to the district court for a judgment against the same upon the third Monday in April, A. D. 1888, and that the sale will take place on the Monday succeeding said third Monday in April, A. D. 1888. The regular term of the district court to be held in the county of Apache commences on the first Monday in July of each year. Paragraph 628, Revised Statutes, pro-

vides that "special terms of the district courts may be held in any county of this territory for the trial of civil and criminal causes, and the transaction of civil and criminal business, generally, or of either, whenever in the judgment of the presiding judge of said court public justice demands it. Such special terms shall be held upon notice for that purpose, to be published in some newspaper printed in the county where the court is to be held, if there be a newspaper published in said county, and if no paper is published in said county, then by notice published in some newspaper published in the district; said notice to be given by the clerk upon the order of the judge." Chapter 7 of the Revenue Law provides for the publication of the delinquent list, when the same must be published, and what it must contain, and it then prescribes the notice to be given in the following language: "The tax collector must append and publish, with the delinquent list, a notice that he will apply to the district court held in and for said county, at the next ensuing term thereof, for judgment against the lands and real estate and personal property described in said list, for said taxes, costs, and interest, and for an order to sell the same for the satisfaction thereof; and shall also give notice that on the Monday next succeeding the day fixed by law for the commencement of such term of the district court all the lands and real estate and personal property, for the sale of which an order shall be made, will be exposed to public sale at the building where the district court is held in said county, for the amount of taxes, interest, and costs due thereon; and the advertisement published according to the provisions of this section, shall be deemed to be sufficient notice," etc. See Rev. Stats. Ariz., p. 479, par. 2685. On publication and advertisement, and the filing of a complaint, the district court acquires jurisdiction over the property described in the delinquent list. But at what term of the court does this jurisdiction obtain? This is a special proceeding, and should be strictly construed. The case of _Brown_ v. _Hogle,_ 30 Ill. 119, cited by counsel, was where the collector was required to apply for judgment at the June term. He applied at July term. The court says: "The term is fixed by law, and the design is that all persons owning

lands in the county, looking to the law for their rights, may know, certainly when the application will be made, and make such defense as the law entitles them to make, and show cause, if they can, why judgment should not be rendered against their lands. If this rested in the discretion of the collector, and the people interested are to derive their knowledge of the term at which the application will be made solely from the collector's notice, much embarrassment and loss might occur, as those notices are not so widely diffused as the law itself.'' And further on, quoting with approval a former decision of the same court, the learned judge says: "It is a sound and inflexible rule of the law that when special proceedings are authorized by statute, by which the estate of one man may be divested and transferred to another, every material provision of the statute must be complied with. The owner has a right to insist upon a strict performance of all the material requirements, especially of these designed for his security, and the non-observance of which may operate to his prejudice. See *Brown* v. *Hogle,* 30 Ill. 119. See, also, *Marsh* v. *Chestnut,* 14 Ill. 224; *Spellman* v. *Curtenius,* 12 Ill. 409.

We must conclude that the term "fixed by law" must be the regular term of court as fixed by statute. Special terms are allowed to be held for the trial of civil and criminal causes, and the transaction of civil and criminal business generally. This is certainly not to embrace special proceedings requiring a fixedness of time. The time of sale is on Monday next succeeding the day fixed by law for the commencement of such term. All the tax-payers are presumed to know their regular terms of courts. The holdings of special terms are in the discretion of the judge. A tax-payer, knowing such time, rests easily, believing at the proper time he can come and make his defense. He may temporarily leave the territory, and, while resting in fancied security, an order is made for a special term of court, and he divested of his property without a hearing. It is not thus in other actions, for there the resident litigant has to be personally served with process, and, besides publication in non-resident cases, the summons and complaint have to be mailed to the defendant.

Conceding, though, that "the ensuing term" meant the special April term of this district court, the record must affirmatively show the authority by which the special term was to be held; it being a special proceeding, and therefore no intendment being in its favor. The record does not disclose that the notice to be given by the clerk upon the order of the judge was so given. It commences: "April 16, 1888, present, presiding," etc. The supreme court of Colorado announces that if the judge of that district did, by order, fix a term of the district court to be begun and held for the county of Fremont on the sixteenth day of November, 1876, this fact should affirmatively appear by the record." *Clelland* v. *People*, 4 Colo. 244. And also in *Dunn* v. *State*, 2 Ark. 254, 35 Am. Dec. 54, it says: "And the most important circumstance upon which the right of power of the judge to order a special term of the circuit court is made to depend cannot judicially appear otherwise than by being made of record, it being a matter altogether *in pais*." . . . The judgment for the plaintiff in the county of Apache, as to the defendant the Atlantic & Pacific Railroad Company, is reversed.

Barnes, J., concurs.

WRIGHT, C. J., dissenting.—I deeply regret that the majority of the court have felt constrained to reverse this case for the reasons assigned. The magnitude of the interests and the questions involved, both to the people and defendant, the Atlantic & Pacific Railroad Company, render the final determination of those interests and questions a matter of grave public concern. If the railroad is not liable to taxation, it should be no longer harassed with suits to enforce the collection of taxes from it; if it is liable, the people are entitled to the revenue. In either case, the public interests and justice require that the matter should be speedily adjudicated. We do not mean to intimate, however, that if the judgment was erroneous it should not have been reversed, but we do contend most strenuously that neither of the reasons assigned in the opinion of reversal is tenable.

The first position taken is that the district court of Apache County had no power or jurisdiction to render a

judgment in the tax suit at the special April term, 1888, and could have only rendered the judgment at the regular July term of that year. We deny this proposition, and hold that· said district court had plenary power, even if it possessed none other than that conferred by our statute, to render such judgment at any other term ·provided for by law; the sole and only prerequisites being that it be a term provided for by law, and that it be the next ensuing term after the due perfection of the statutory notice or summons. It cannot matter that such term ·be a general or special term. The notice required is the same at each, and the power and jurisdiction of the court is as full and complete at one term as at the other. If this be not so, the statute itself is meaningless, and its language a delusion. It says: "Special terms of the district courts may be held in any county of this territory for the trial of civil and criminal causes, and the transaction of civil and criminal business, generally or of either, whenever in the judgment of the presiding judge of said court public justice demands it." See Rev. Stats. Ariz. 1887, par. 628. Well, in the judgment of the presiding judge of the district court of Apache County, public justice demanded that the special April term, 1888, thereof be held. Accordingly, in compliance with the statute, the judge issued the order calling said term, and requiring the clerk of said court to publish due notice thereof in the St. Johns Herald, a newspaper published in Apache County. It is not denied that all this was done, and that said order was by the clerk filed with the records of said court; but it is claimed that the order and notice are not set out in the record of this case. Now, we do not know what law-maker drew this statute; but, after mature deliberation, we have been wholly unable to conceive of language, conferring upon the court power and jurisdiction more fully, accurately, and completely, to render any sort of judgment or transact any sort of business, either civil or criminal. But, while this is incontrovertible, the majority of the court in their opinion say: "This is certainly not to embrace special proceedings requiring fixedness of time. The time of sale is on Monday next succeeding the day fixed by law for the commencement of such term." What term?

What is the day fixed by law for the commencement of such term? Where is the fixedness of time? The opinion does not tell us. The only "fixedness" is that it must be the first term following the publication of the notice. The opinion makes it in this case the second term thereafter. Do my learned associates mean to say that the statute prescribes any definite, fixed term *eo nomine?* If the legislature had named any particular special or general term at which alone tax-suits should be tried and tax-judgments rendered, that would perhaps be a limitation upon the power and jurisdiction of the court. But it has not done so. There is absolutely nothing in the revenue act "requiring a fixedness of time" for the commencement of tax-suits in the district court, or a definite term of court, either general or special, at which alone tax judgments shall be rendered. The nearest approach to "a fixedness of time" is where the tax collector is required to apply for the tax judgments at the next ensuing term after the due completion of the statutory notice. The word "ensuing" is synonymous with the word "following"; both mean "coming after." Now, it is not and cannot be denied that the court had power to call the special April term, 1888.

It is not and cannot be denied that that was the next ensuing term after the completion of the notice. It was the first term following or coming after said notice. Did the legislature mean what it said when, by specific enactment, it required the tax collector to apply for the tax judgment at the term next ensuing or following, or coming after the completion of the statutory notice or summons to delinquent tax-payers? If it had meant the next ensuing general term only, would it not have used the one single word "general"? Or, as it is more probable, as it had provided only one general term for Apache County, viz., the term beginning on the first Monday in July, would it not have said that such judgment should be applied for at the general July term? If this had been the case, and the judgment had been rendered at the special April term, it would have been clearly irregular. This was the case with the principal authority relied upon by the majority of the court to sustain their opinion. See *Brown* v. *Hogle,* 30 Ill. 119. There the collec-

tor was required by statute to apply for judgment at the June term. Of course, that did not mean the July term, or any other term, general or special. It meant the June term; no more, no less. And when he applied at the July term he was wrong. But our statutes do not say the July term, or any other term, special or general, except the particular term next ensuing, following, or coming after the completion of the publication of the notice; and that term in this case was the special April term, 1888. Nothing can be clearer and more certain than this. No sort of ambiguity can be detected here. It is plain, unmistakable. The conclusion is irresistible, then, that the court had power, under the statute, to call the special April term, 1888, and, if it did call it, according to the provisions thereof, it had power and jurisdiction, even under the same statute, to render the tax judgment. The tax-suit was either a civil or criminal suit, or it was civil or criminal business. It is idle to contend otherwise. Well, if it was either, the statute authorizing special terms clothed the court, even if, as a court of general jurisdiction, it had no inherent power, with complete and plenary power and jurisdiction to act. Does not the power to try civil and criminal causes, and to transact civil and criminal business, generally, necessarily include the power to transact civil or criminal business specially? Does not the greater include the less? If the opinion herein is correct in this regard, we have in this territory this unprecedented judicial condition, viz.: That at a special term of the district [court], called as provided for by the statute, a man may be indicted for murder, tried, convicted, and sentenced to be hanged, and the hanging would be legal, but a judgment cannot be had against him for a two-dollar tax. Pretext can generally be found, if sought with diligence; and the history of tax litigation reveals that delinquent tax-payers have generally been as successful in this direction as any other class of litigants. More especially is this true with reference to corporations that have sought to avoid taxation. Hence nothing is truer of modern jurisprudence than that the great bulk of adjudication is towards stricter construction, where exemption from taxation is sought, and more liberal construction in favor of revenue laws.

And it is here to be observed that the three authorities relied upon in the opinion, viz., the decisions in 12, 14, and 30 Illinois, have been virtually abrogated by the Illinois revenue laws of 1872-73; and the supreme court of Illinois in 1875-76, and in fact down to the present time, in construing this revenue law, and proceedings under it, has distinctly recognized this fact. In the case of *Thatcher* v. *People*, 79 Ill. 597, the supreme court of that great state says: ''Hence this amendment to our revenue law; and by it nearly, if not all, our previous decisions have been abrogated as rules for the determination of cases arising after the adoption of the amendment.''

Now, in 1887, the territory of Arizona, through its legislature, adopted this Illinois revenue law of 1872-73, almost *verbatim et literatim,* with the construction put upon it by the supreme court of Illinois in *Thatcher* v. *People,* and other cases passed upon prior to 1887. 30 Ill. 119, has already been noticed; but it is to be further observed that *March* v. *Chestnut,* 14 Ill. 224, and *Spellman* v. *Curtenius,* 12 Ill. 409, the other two cases relied on, only uphold the old, dogmatic, common-law rule that requires technical accuracy in the form of tax assessments. Not one word is said in either case about the power or jurisdiction of the court. And we have just seen that by our revenue law, and its prototype, the Illinois revenue law of 1872-73, those common-law rules have either been abrogated entirely or greatly modified. How is it, then, that the majority of the court rely solely on these authorities to sustain their opinion on this branch of the case? The language of the opinion on this point, after quoting approvingly these authorities, is: ''We must conclude that the term fixed by law must mean the regular term as fixed by the statute.'' Here, again, we most respectfully dissent, and hold that a special term of court, called according to the provisions of the statute, is as much a term ''fixed by law'' as any regular or general term. The mode of fixing by law the term is different; that is all. In the one case the legislature fixed the term in the statute; in the other, by the presiding judge, the term was fixed by law, i. e., by authority and according to the provisions of the statute. A term fixed by law means a term determined upon

by law. So it is fixed and definite, it is wholly immaterial whether it be a term fixed by the statute, or a term fixed by the judge by authority of the statute. In either case, or in both, it is "a term fixed by law." Is it not, therefore, a strained construction to say, "the term fixed by law" must mean, alone, the regular term of court fixed by the statute? The converse of a proposition is necessarily true, and therefore, if the phrase "fixed by law" means only regular terms fixed by the statute, special terms, although fixed by the judge by authority of the statute, are not terms fixed by law. And if they are not terms fixed by law they are not legal terms, and can therefore have no legal existence.

But says the opinion: "All the tax-payers are presumed to know the regular terms of court." Of course, they are supposed to get this knowledge from the statute. Is the statute fixing the regular terms of court the only portion of that repository of law that delinquent tax-payers are presumed to know? Are they not equally presumed to know the other provisions of the statute, especially those providing for special terms? But again says the opinion: "Special terms are held in the discretion of the judge." Well, has the delinquent tax-payer any cause of complaint? He is presumed to know the law. He knows that that law provides that, whenever in the judgment of the presiding judge public justice demands it, special terms of the district court may be held for the trial of any sort of cases and the transaction of any sort of business. He knows his taxes are overdue; that public justice demands that he should pay his taxes as well as the rest of his fellow citizens. He knows that public justice demands that, if he is to be shielded with the protection of the government, he should be burdened with and should pay his share of taxes to support the government. He knows, or ought to know, that protection and taxation are correlative rights. Has not the revenue law been just to him? Does it not provide that if the tax-payer is dissatisfied with the taxes assessed against him he may appeal to the board of equalization? Was not that privilege allowed and embraced in the case at bar? If the court was speaking of tax-payers before they became delinquent, it seems to us there would be more force in the opinion. It

must be borne in mind, however, that delinquent tax-payers alone are here spoken of,—those who are endeavoring to thwart the purposes of the revenue law; a purpose which that law, in its broad, comprehensive, just, and enlightened provisions, did not intend should be accomplished by mere technicalities. Finally, on this branch of the case, the court say: "He [meaning the delinquent tax-payer] may temporarily leave the territory, and while resting in fancied security," etc. What right has he to rest in fancied security? He is defaulter in the payment of his taxes, and does he not know it? In that sense, if he leave the territory temporarily is he not temporarily a refugee from justice? Would it not be an honest and reasonable apprehension on his part to suppose that that government, which had protected him and his property, and to which his taxes had long since been due, would use every legitimate means at its disposal, after those taxes became due and were not paid, to compel him to do that which he, as a good citizen, ought to have done long ago? Is not every day that he is indulged, after his taxes have become delinquent, a matter *ex gratia* the government, for which he ought to be thankful, instead of complaining and "resting in fancied security"? If a tax-suit is different from other actions, it is just as widely different at a regular as at a special term of court.

Our conclusion, therefore, is that as the court had unquestionable authority to hold the special April term, 1888, of the Apache County district court; that, as at said term it had plenary power and jurisdiction, not only as a court of general jurisdiction, but from the broad and unlimited grant of power in the statute authorizing such terms to render any sort of judgment, civil or criminal, including tax judgments, or transact any sort of business, civil or criminal, including tax business; and that as said special April term, 1888, was the term next ensuing, following, or coming after the due completion of the statutory notice to delinquent tax-payers, it alone was the legal and proper term at which the tax-collector should have applied for his tax judgment; and that the proceedings of the court in the tax suit were *coram judice*. The law being peremptory in requiring the tax collector to apply for judgment at the first term coming after

the completion of the notice, he could not, without some good excuse, legally apply at the second term thereafter.

In the next place, the court, in their opinion say: "Conceding, though, that the next ensuing term meant the special April term of the district court, the record must affirmatively show the authority by which the special term was held." We most respectfully, but solemnly, deny this proposition also, and hold that the law conclusively presumes the special term to have been properly held till the contrary be made to appear. The district court of Apache was and is as much a court of general jurisdiction at a special term as at a general term. There are no words of limitation as to its jurisdiction at a special term, contained in any law or statute; nor is its power limited in any degree differently at a special term from what it is at a general term; and therefore the same presumptions as to jurisdiction and the regularity of its proceedings at a special term must be indulged as at a regular term. In either case, its proceedings are to be according to the course of the common law, modified only by statutory limitation. It is everywhere and always a court of general jurisdiction. Of course, it would be competent for a defendant to show affirmatively that the court had not acquired jurisdiction of his person, for instance; but the *onus probandi* would be on him, and until he made the requisite proof the presumption would hold that the court had jurisdiction. Let it be observed that it would be as competent for him to make such affirmative proof at a regular term as at a special term, and *vice versa*. It is a misapprehension to suppose that, because the term of the court is a special term, its proceedings are necessarily special. Some of its proceedings might be special; so might they be at a general term. If tax suits are special proceedings, they are not less so because had at a general term. The truth is the law contemplates that court proceedings at a special term shall be as general as at a regular term; for special terms are held for the trial of civil and criminal causes, and for the transaction of civil and criminal business generally or either. This language would certainly compass all the purposes for which regular terms are held. The legislative will is thus clearly revealed, that the proceedings of a special

term shall be as general as at a regular term, and, that the court should be as much a court of general jurisdiction at the one term as at the other. The law then presumes that the district court had jurisdiction, and that its proceedings were legal and regular at the special April term, 1888, in Apache County, until the contrary is made to affirmatively appear. But says the opinion: "The record does not disclose that the notice to be given by the clerk upon the order of the judge was so given." The record does not disclose this fact, and it is perfectly certain that it did not have to disclose it. Nor was it necessary that the order of the judge calling the special term, should be set out in the record.

The district court of Apache County at its special April term, 1888, being a court of general jurisdiction, the presumption of law is in favor of the regularity of its said term until the contrary is made to appear. If the opinion is correct in this regard, we have this singular condition of affairs: That if a hundred civil and criminal cases are to be tried at a special term of the district court, each trial will be void, unless the record of each case contain a recorded copy of the order of the judge calling the special term, and also a recorded copy of the notice thereof, published by the clerk upon the order of said judge in some newspaper in the county where the term is to be held. This is necessarily so, because the court speaks of the "record." It means the record of the tax suit, no other record being before it, and that record must affirmatively show, etc.; and therefore what it means to say is that the record of this particular case, as well as all others tried at that term, must affirmatively show that the said order and notice were given, and the only way that these facts can be made to judicially appear, is to record the said notice and order in each case. The record of each case stands alone, so that a hundred cases having been tried, the order and notice would have to be recorded a hundred different times. Can this be law? Can this be essential to the jurisdiction of the court? Now, the statute providing for special terms does not require that either the order or notice be filed or recorded by the clerk. It does require that the order be made and the notice given.

Even these requirements, however, are only directory. It is not denied that this was done in this case. At all events, until the contrary be made to affirmatively appear, the law by intendment says it was done. Indeed, counsel for defendant in their argument admitted that the order of the judge calling the term was made and filed by the clerk, and that the clerk gave the notice. But the court say the notice should affirmatively appear; that is, that it should have been recorded by the clerk with the record of the case. That is not law. The Iowa statute of 1839, authorizing territorial district judges to hold special terms of court, was very similar to ours. The only difference was that there the judge was required to direct the sheriff instead of the clerk to give the notice. In the case of *Harriman* v. *State*, 2 G. Greene, 270, the record was silent as to whether the notice had been given or not, precisely as in the case at bar. Mr. Justice Greene, in delivering the opinion of the supreme court of Iowa in this case, said: "Another objection was urged to this special term, to which we will merely advert. It is contended that if the court was legally empowered to hold a special term it was in this instance done without authority of law, because it does not appear by the record that the judge notified the sheriff of the same, or that the sheriff put up at each of the precincts in the county at least three weeks' notice of the time when the special term was to commence. As decided by this court time and again, we must necessarily presume that the officers of the court performed their duty in such particular, unless the contrary appears. An averment of such facts in a record is not necessary. The record being silent, the fact that legal notice was given is established by intendment."

Does not this exactly cover the case at bar? But even if it were a fact that the clerk gave no notice of the special April term, 1888, at all, the above authority settles the law that the proceedings of the court would not have been thereby invalidated. It says further: "The proceedings of the court, without such notice were not void. The statute providing for it is merely directory, and such notice is not considered an essential prerequisite to confer jurisdiction." See *Friar* v. *State*, 3 How. (Miss.) 422.

Again, in the case of *Wright* v. *Marsh*, 2 G. Greene, on page 104, this same high authority, after clearly demonstrating that the territorial district courts of Iowa were in the highest sense courts of general jurisdiction, says: "The term 'inferior courts,' in a strict and technical sense, is only applicable to courts of a limited and special jurisdiction, in which the proceedings are not according to the course of the common law, but defined by statutory regulations. It must be obvious that our territorial district courts cannot be included under that term. They were endowed with all the general powers and universal attributes of common-law jurisdiction.

"But it is contended that if the district court, which rendered the decree, did possess general jurisdiction, it acted in the partition proceedings under special authority conferred by the statute, and was consequently *quoad hoc* an inferior or limited court. The requirements of the statute, so far as they are especially substituted for equity and common-law proceeding, are paramount, but, beyond such special substitution, law and chancery interpose with unabated and general concurrent authority. Hence we conclude that, even in cases in partition under our statute, the district court cannot be considered *quoad hoc* as inferior or limited. The doctrine will not be questioned that the general jurisdiction of a court cannot be taken away, unless by express words of exclusion. As the record comes from a court of general jurisdiction, it did not become necessary to incorporate into it a copy of the notice or the proof of publication. Without these the record would have been sufficiently authentic and conclusive. The authority of the court over the subject-matter and over the parties and the correctness of the proceedings would have been favored by all the force of legal presumption."

But that great supreme court which gave such lucid and conclusive construction to the Arizona revenue law, while yet it was the revenue law of Illinois, has, it seems to us, put this question beyond the line of discussion. In the case of *Teerney.* v. *People,* 81 Ill. 411, Mr. Justice Sheldon says: "It is unnecessary that the order calling a special term of the circuit court should be set out in the record.

Unless the contrary expressly appears, the presumption of law is in favor of the regularity of the term." And in the case of *Cook* v. *Renick,* 19 Ill. 598, the first error assigned by appellant was as follows: "That the term of the court, at and during which final judgment was rendered in said cause, does not appear by the record to have been held at the time, convened in the manner, and notice thereof given, as required by law." In delivering the unanimous opinion of the court in that case, Chief Justice Caton said: "Where a proceeding appears to have been at a general or special term, the presumption of law is in favor of the regularity of said term, and of the jurisdiction of the court. This presumption may be rebutted, it is true, by showing affirmatively that there was no order of the judge or court appointing the special term, or where the court can see from the public law that the judge was required to be in another place, holding another court. Such were the cases of *Goodsell* v. *Boynton,* 1 Scam. 555, and *Archer* v. *Ross,* 2 Scam. 303."

### ON REHEARING.

BARNES, J.—The petition for a rehearing in this case must be denied. The questions presented thereby were fully argued by counsel and considered by the court in the former hearing. It evidently seeks to discuss with the court rather the reasons for the conclusion than the decision itself. The purpose of a rehearing is not to give an opportunity to re-open the whole case for a new discussion. It is simply an opportunity, out of abundant caution, for the court to correct any misapprehension of the record, or any oversight or omission that may have been inadvertently made. *Copper Co.* v. *Copper Co.,* 2 Ariz. 169, 11 Pac. 396; *Sauls* v. *Freeman,* 24 Fla. 225, 4 South. 577; *Hannan* v. *Grizzard,* 99 N. C. 161, 6 S. E. 93; *Elliott* v. *Cale,* 113 Ind. 383, 14 N. E. 708, 16 N. E. 390; *Shreveport* v. *Holmes,* 125 U. S. 694, 8 Sup. Ct. Rep. 1389. However, after a careful consideration of the case, we must adhere to our decision rendered. Our attention is called to the view expressed that the record must show that the special term was called according to law, and it is urged that, as the proceedings of courts of general jurisdiction are presumed to be regular, we must presume that this proceed-

ing was so. There seems to be a misapprehension as to just what is meant here. When a court of general jurisdiction enters an order or judgment, it is a record against which there may be "neither averment nor proof." It is verity. What is recited as having been done is presumed to be done, and upon competent evidence. But this presumption will not put into the record what is not there,—will not make an order, where there is none. The convening order of any term of court is a part of the record in such case, considered during that term. It is the beginning, the basis, the authentication, of all that follows. It recites that the court met according to law on the day named, and that there were present the judge, the clerk, the marshal, the sheriff, etc.; and then the record recites that on a day named, said day being one of the days of said term in a certain cause named, the following proceedings were had and entered of record. If it be a special term, the convening order would say, in substance, that on a day named the court met pursuant to an order of the judge, and after due notice, according to law, etc. Such a record imparts verity, and it will be presumed that the requirements of the statutes as to the order and notice have been complied with. This is what we mean when we say that the record must somewhere show that the special term met according to law, and upon due notice. In this record there is no convening order. Nothing to show, by way of recital in the record, whether the proceedings were in regular or special term. If in special term, whether it was duly entered and upon due notice. Nothing to show that the court was in session at all. Presumptions will not supply this; where it appears that proceedings of a court were had it will be presumed that they are regular. *Lawrence* v. *Fast,* 20 Ill. 342; *Dukes* v. *Rowley,* 24 Ill. 220. These are maxims so old and well-established as to have hardly been questioned.

Again, it is urged that the collection of taxes is not a "special proceeding." It is idle to stumble over words. It is a proceeding *in rem.* It is the creature of statute. Service is made in a manner provided for by law, and no personal service is required. Each step in the cause is pointed out. What evidence is required, also. It is summary in its

form and mode of procedure. In this sense it is special, and must conform to law. The statute says that the judgment for taxes shall be rendered at the next term "fixed by law" after notice, etc. The law fixes the time of a term of court in Apache County on the first Monday of July. This is the only term fixed by law. It is a term whose time of session is fixed by the statute itself, and of which every person is charged with notice. Where a special term of court is provided for by law, its time of session is fixed by order of the judge, not by the law. Everybody would know when to appear and defend at the term fixed by law, and he might rest secure until then to make his defense. In *Thatcher* v. *Powell*, 6 Wheat. 119, Chief Justice Marshall says: "In summary proceedings, where a court exercises an extraordinary power, under a special statute prescribing its course, we think that course ought to be exactly observed, and those facts especially which give jurisdiction ought to appear, in order to show that its proceedings are *coram judice.*" Blackwell on Tax Titles (section 356), commenting on this decision, adds: "And it makes no difference whether this power is conferred upon a special tribunal created for the sole and only purpose of trying tax causes, or whether the power is superadded to a court of general common-law and chancery jurisdiction. When this special power is conferred upon such courts, to be exercised in a summary way, they are treated, in the exercise of this particular power, as courts of special jurisdiction." See *Young* v. *Lorain,* 11 Ill. 636, 52 Am. Dec. 463; *Dentler* v. *State,* 4 Blackf. 258, 18 Am. Dec. 159; *Smith* v. *State,* 5 Blackf. 65; *Williams* v. *State,* 6 Blackf. 36; *Williamson* v. *Berry,* 8 How. 540; *Glass* v. *Betsey,* 3 Dall. 7; *Rose* v. *Himely,* 4 Cranch, 241; *Elliott* v. *Peirsol,* 1 Pet. 328; *Wilcox* v. *Jackson,* 13 Pet. 499; *Shriver* v. *Lynn,* 2 How. 430; 2 Am. Lead. Cas., 733 et seq.

Porter, J., concurs.